**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| J'MARI BETHEA, individually, and WickFORCE, as an organization, | |
| Plaintiffs, | CASE NO.   2:16-cv-140 |
| v. | |
| NATHAN DEAL, in his official capacity as Governor of the State of Georgia, and BRIAN P. KEMP, in his official capacity as Secretary of State of the State of Georgia, | |
| Defendants. | |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiffs, J'MARI BETHEA and WickFORCE, by and through counsel, respectfully file this COMPLAINT for Injunctive and Declaratory Relief against Defendants NATHAN DEAL, in his official capacity as Governor of the State of Georgia, and BRIAN P. KEMP, in his official capacity as Secretary of State of the State of Georgia, and allege upon information and belief as follows:

**INTRODUCTION**

1.     "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

1

2.    This is a challenge to the State's failure to extend the October 11, 2016 voter registration deadline for participation in the November general election, despite the massive disruptions caused by Hurricane Matthew.  Under the circumstances, the State's failure to extend the registration deadline amounts to the denial of critical voter registration opportunities in violation of the Fourteenth Amendment, Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and Section 8 of the National Voter Registration Act of 1993, 52 U.S.C. § 20507(a)(1).  Absent relief, tens of thousands of eligible Georgians will be prevented from participating in the November general election.

3.    On October 6, 2016, as Hurricane Matthew was bearing down on the State, and with six days left in the voter registration period for the November election, Georgia Governor Nathan Deal issued an order designating various areas of the State for mandatory evacuation. Five hundred thousand people live in the mandatory evacuation zone, which encompasses all or part of six counties.[1]  Governor Deal also called for the voluntary evacuation of residents living in the low-lying areas west of I-95, which encompass all or part of 30 Georgia counties.[2]  More than 1 million Georgians were under mandatory or voluntary evacuation orders.  Then, on the following day, October 7, County and State government offices were closed.  U.S. Post Offices were closed, and services were disrupted due to storm conditions.[3]

---

[1] These counties are: Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh. *See* Governor Nathan Deal, Office of the Governor, *Deal orders mandatory evacuation east of Interstate 95 for six coastal counties*, Oct. 6, 2016, (*available at https://gov.georgia.gov/press-releases/2016-10-06/deal-orders-mandatory-evacuation-east-interstate-95-six-coastal-counties*.).

[2] These counties are: Appling, Atkinson, Bacon, Brantley, Bryan, Bulloch, Burke, Camden, Candler, Charlton, Chatham, Clinch, Coffee, Echols, Effingham, Emanuel, Evans, Glynn, Jeff Davis, Jenkins, Liberty, Long, McIntosh, Pierce, Screven, Tattnall, Treutlen, Toombs, Ware, and Wayne counties. *See Gov. Deal Orders Coastal Georgia Evacuation*, Oct. 6, 2016, (*available at www.emergencymgmt.com/disaster/Gov-Deal-orders-coastal-Georgia-evacuation.html*).
[3] *See* USPS Service alert: Hurricane Matthew, Oct. 6, 2016, *available at http://www.postaltimes.com/postalnews/usps-service-alert-hurricane-matthew/*.  Closures and

4.     These massive disruptions occurred during the busiest time for voter registration every four years: the last days of the registration period for participation in a presidential general election.  Indeed, over 77,000 people registered to vote in Georgia during the final days of the registration period for the 2012 presidential election.[4]  The fact that registration activity is particularly high during this period is well-known to state and local elections officials. Nevertheless, without any legitimate justification, the State simply refused to follow the examples of neighboring states and extend the voter registration deadline in response to this natural disaster. In so doing, the State ensured that tens of thousands of voters who would have registered during this period will be unable to participate in the November election.  Plaintiffs—a resident of Glynn County and a nonprofit organization whose mission is to assist members of historically underrepresented communities in registering to vote— bring this action to vindicate the right to register to vote, the right of organizations to conduct voter registration drives, and the right of eligible Georgians disenfranchised by the State's refusal to extend the voter registration deadline to vote in the upcoming election.

## PARTIES

5.     Plaintiff J'MARI BETHEA, a resident of Brunswick, Glynn County, Georgia, is 18 years old, and had planned to register to vote on October 6, 2016.  Plaintiff Bethea was prevented from registering to vote because of Governor Deal's mandatory evacuation order.  When Plaintiff Bethea returned to his residence on Tuesday, October 11, 2016, there was no power in his

---

disruptions occurred in at least 17 counties including all six counties in the mandatory evacuation zone.
[4] *See*
web.archive.org/web/20121114124439/http://sos.georgia.gov/elections/voter_registration/racere port.pdf.

neighborhood which is located approximately 8 blocks from the Glynn County Board of Elections Offices.

6.      Plaintiff WickFORCE regularly conducts voter registration drives in Glynn County and was planning a voter registration drive in Glynn County on October 8, 2016.   WickFORCE was forced to suspend voter registration activities in Glynn County between October 6 and 10, 2016, due to the mandatory evacuation order issued by Governor Deal.  WickFORCE determined that door to door canvassing in Glynn County was infeasible because power was out in 90% of the county, roads were impassible, electrical wires were down, trees were down, and local officials asked that people remain off the roads.  Moreover, residents during this time were prevented from returning to their homes because bridges and roads needed to be inspected to ensure their safety. *See* Terry Dickson, *Crews in Glynn, McIntosh counties clearing roads of debris from Hurricane Matthew*, Florida Times Union, Oct. 8, 2016, 1:29 p.m. (*available at http://jacksonville.com/news/2016-10-08/crews-glynn-mcintosh-counties-clearing-roads-debris-hurricane-matthew*.).

7.      Defendant's refusal to extend the voter registration deadline will frustrate Plaintiffs' efforts to register to vote and to register eligible voters and increase civic engagement. Plaintiff Bethea will be unable to register to vote.  Plaintiff WickFORCE will be unable to undertake voter registration in the affected regions.

8.      Defendant Nathan Deal is being sued in his official capacity as Governor of the State of Georgia.  Governor Deal is granted broad emergency powers under Georgia state law. O.C.G.A. § 38-3-51.  Those powers include the ability to extend the voter registration deadline for the entire State of Georgia or one or more of its counties.

9.     Defendant Brian P. Kemp is being sued in his official capacity as Secretary of State of the State of Georgia. Secretary Kemp's responsibilities include maintaining the state's official list of registered voters and preparing and furnishing information for citizens pertaining to voter registration and voting. O.C.G.A. §§ 21-2-50(a)(14), 21-2-211. Defendant also serves as the Chairperson of Georgia's State Election Board, which promulgates and enforces rules and regulations to obtain uniformity in the practices and proceedings of election officials and promotes the fair, legal, and orderly conduct of all primaries and elections in the state. *Id.* §§ 21-2-30(d), 21-2-31(1)-(2). Defendant is the chief election official responsible for the coordination of Georgia's list maintenance responsibilities under the National Voter Registration Act of 1993 ("NVRA") and the Help America Vote Act of 2002 ("HAVA"). *Id.* §§ 21-2-210, 21-2-50.2.

## STATEMENT OF FACTS

10.     The loss of voter registration opportunities immediately preceding the voter registration deadline in Georgia is simply devastating. Georgia residents are prohibited from voting if they do not register before the voter registration deadline. Generally speaking, voter interest in an election increases as the election draws closer, such that the highest rates of voter registration activity occur during the period immediately prior to the registration deadline for the election. Voter interest in an election tends to grow closer to the election, and voters generally rely on the published deadlines for registration when making plans. During the final days of the registration period for the 2012 presidential election, at least 77,000 people registered to vote in Georgia.

11.     Racial and ethnic minorities tend to register at disproportionately higher rates during the last few days of the registration period. As of October 2010, approximately 29.7% of the voting age population and 29.5% of registered voters in Georgia were Black. But by way of

comparison, in the 2012 presidential election, of the people who registered to vote during the final days of the registration period, approximately 49.7% were Black.

12.     Younger voters also tend to register at disproportionately higher rates during the last few days of the registration period.

13.     Third-party voter registration drives see high rates of activity in the days immediately preceding the voter registration deadline.

14.     This year, however, the opportunity to register to vote during the last six days of the registration period was largely lost.  Over 1 million Georgians live in evacuation zones; and, in dozens of counties, government offices where voters can obtain voter registration forms and/or register to vote were closed between October 6 and 11, 2016.  During this same period of time, power outages were reported across the evacuation zone, limiting access to online voter registration.  Tens of thousands of voters – who relied on the State's published October 11, 2016 registration deadline, but then found themselves unable to register during the last few days of the registration period – likely lost their opportunity to register to vote as a consequence.

15.     Plaintiff Bethea was unable to register to vote during the last six days of the voter registration period because the Glynn County government offices were closed, the U.S. Postal Service had suspended services in the area, and there was no power in order to access the Secretary of State's website to register online.

16.     Voter registration drives also ground to a halt during this critical period.  Plaintiff Georgia NAACP was unable to hold a voter registration drive in Liberty County. Plaintiff WickFORCE was unable to hold its voter registration drive on October 8, 2016.  Those plans, however, were largely dashed.  As a result, hundreds of people whom Plaintiff WickFORCE and

the NAACP could have helped register will be disenfranchised and unable to participate in the November general election.

17.     During October 6 through 11, the Georgia State Conference of the NAACP (Georgia NAACP) was planning to register 121 individuals who are currently detained, but not convicted, and assist those individuals in obtaining absentee ballots.  Because of the Governor's mandatory evacuation order, the Georgia NAACP was unable to assist these 121 individuals with registering to vote.

18.     At the time of the Governor's mandatory evacuation order, the Georgia NAACP Glynn County unit had 44 completed voter registration cards to turn in.  The Georgia NAACP Coordinated Campaign Director for Our Vote Counts was unable to return to Glynn County until Wednesday, October 12, and thus, unable to submit the voter registration cards to the Glynn County Board of Elections Office.

19.     The State could have prevented this widespread disenfranchisement by extending its voter registration deadline to accommodate the tens of thousands of Georgians affected by Hurricane Matthew.  It failed to do so.

20.     The National Voter Registration Act of 1993 requires states to ensure "that any eligible applicant is registered to vote" if they submit their registration form as close to Election Day as the state will provide – and that in any event the state cannot require voters to register more than 30 days prior to an election. 52 U.S.C. § 20507(a)(1).

21.     Georgia state law requires that the main elections office in each county "remain open for business during regular office hours on each business day, except Saturday" and "be open at such designated times other than the normal business hours as shall reasonably be

necessary to facilitate registration and at such other hours as will suit the convenience of the public." O.C.G.A. § 21-2-215(c).

22.     The voter registration deadline in Georgia was Tuesday, October 11. *See* O.C.G.A. § 21-2-224(a).

23.     Georgia state law provides that "[a]ny person desiring to register as an elector shall apply to do so by making application to a registrar or deputy registrar of such person's county of residence in person, by submission of the federal post card application form as authorized under Code Section 21-2-219, by making application through the Department of Driver Services as provided in Code Section 21-2-221, by making application through the Department of Natural Resources as provided in Code Section 21-2-221.1, by making application through designated offices as provided in Code Section 21-2-222, or by making application by mail as provided in Code Section 21-2-223." O.C.G.A.. § 21-2-220(a).  Applicants with access to a computer and a current Georgia driver's license or state identification card may register to vote online. O.C.G.A. § 21-2-221.2.

24.     Georgia residents are barred from voting a ballot that will be counted if they do not meet the registration deadline because Georgia does not permit eligible citizens to register during the in-person early voting period or on Election Day.

25.     A significant number of Georgia residents, including those in both the mandatory and voluntary evacuation zones, register to vote in the days leading up to the registration deadline.

26.     Governor Deal declared a state of emergency for thirteen counties, including Georgia's six coastal counties, on Tuesday, October 4, 2016.  *See Gov. Nathan Deal declares state of emergency ahead of Hurricane Matthew*, WTOC, Oct. 4, 2016, (*available*

8

at http://www.wtoc.com/story/33315568/gov-nathan-deal-declares-state-of-emergency-ahead-of-Hurricane-Matthew-395861441.html.).

27.     The United States Postal Service suspended operations.

28.     Governor Deal issued a mandatory evacuation order for six counties - Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh – on Thursday, October 6, 2016. *See Press release, Deal orders mandatory evacuation east of Interstate 95 for six coastal counties*, Oct. 6, 2016, (*available at https://gov.georgia.gov/press-releases/2016-10-06/deal-orders-mandatory-evacuation-east-interstate-95-six-coastal-counties.*).

29.     Hurricane Matthew hit the Georgia coast as a Category 2 hurricane on Friday, October 7, 2016.

30.     The Hurricane caused damage in all six coastal counties, including downed trees, power outages, and flooding.  Approximately 340,000 residents lost power during the storm. And, as of October 12, 35,000 residents of the evacuation zone were still without power, including Plaintiff Bethea.

31.     Residents of the six coastal counties were evacuated to shelters as far away as Augusta, Macon, Colquitt County, and Lowndes County.

32.     Although Glynn County lifted its mandatory evacuation order on the afternoon of Saturday, October 8, Georgia State Troopers blocked access to the evacuation zone because the state's mandatory evacuation order had not been lifted. *See* Michael Hall, *Deal: Communication Breakdown In Return After Matthew*, Golden Isle News, Oct. 9, 2016, (*available at http://goldenisles.news/breaking/deal-communication-breakdown-in-return-after-matthew/article_aad8f888-8e52-11e6-8f6c-4b42bd724c6b.html.*).

33.     Although Governor Deal lifted the mandatory evacuation order on Sunday, October 8, 2016, residents of the area were asked to delay their return because pf the storm damage.  *See* Hurricane Matthew recovery update, Oct. 8, 2016, (*available at https://gov.georgia.gov/press-releases/2016-10-08/hurricane-matthew-recovery-update-0.*).

34.     County offices in the evacuation zone were closed while the county was under mandatory evacuation orders.  The Camden and Glynn County Boards of Elections Offices closed on Thursday, October 6, 2016, and did not reopen until Tuesday, October 11, 2016. The McIntosh County Board of Elections closed on Thursday, October 6, 2016, and did not reopen until Monday, October 10, 2016.  The Liberty County Board of Elections Offices were also closed.

35.     Although applicants who already have a Georgia driver's license or state ID card may register to vote online, this technology was not available to many residents of the evacuation zones, including Plaintiff Bethea whose power was not restored until the evening of Tuesday, October 11, 2016.

36.     Online registration was not available to applicants who lack a Georgia's driver's license or state ID card, including persons who have recently moved to Georgia, senior citizens, students, and others. Online registration was also not available to those without power, to those without a computer, and to those without internet access.

37.     The Georgia online voter registration database experienced problems on Monday, October 10, 2016, and Tuesday, October 11, 2016.  These problems prevented some applicants from successfully completing online voter registration applications.  *As online voter registration closes, mixed success in Georgia*, 11ALIVE, Oct. 11, 2016, (*available at http://www.11alive.com/news/local.as-online-voter-registration-closes-mixed-success-in-georgia/333992259.*).

10

38.     Georgians who attempted in person registration at Georgia Department of Motor Vehicle Offices experienced long lines.  At one location, wait lines were more than 205 minutes. At least one person reported still being in line when the location closed and was unable to register to vote in November's election.  *See 201-minute wait at Sandy Springs drivers license office on las day of voter registration,* 11ALIVE, Oct. 12, 2016, (*available at http://www.11alive.com/news/local/205-mintute-wait-at-sandy-springs-dmv-amid-voter-registration-last-day/334087050.*).

39.     The Secretary of State's Office should have been prepared for last minute voter registration.  On February 1, the last day to vote in the March 2016 primary, Secretary Kemp reported 21,351 voters registered.  During the final hours of February 1, 2016, the traffic on the Secretary of State's website was one new or updated voter registration every 3 seconds. *See* Record-breaking Number of Voters Registered in Georgia, Feb. 4, 2016, (*available at http://savannahceo.com/news/2016/02/record-breaking-number-voters-registered-georgia/.*).

40.     Hurricane Matthew and its aftermath effectively prevented residents of the evacuation zone from registering to vote up to 30 days before the election, during what is typically the busiest period of voter registration every four years.  Governor Deal's evacuation order and the closure of county government offices, prevented residents of the evacuation zone from registering to vote in person.  The disruption of the US postal services prevented residents from registering by mail.  And, due to the widespread power outages, many residents were not able to access, download, and print registration forms to be mailed or to register to vote online.

41.     A significant number of prospective minority voters were affected by the loss of voter registration opportunities due to Hurricane Matthew.  The minority population in the evacuation zone is:  Glynn County 25.7% Black and 6.4% Hispanic; Liberty County 39.4% Black

and 11.1% Hispanic; Camden County 18.6% Black and 5.7% Hispanic; and Bryan County 14.8% Black and 5.7 % Hispanic.[5]

42.     The state of emergency declared by Governor Deal affected more than just the residents of the evacuation zone.  Hundreds, if not thousands, of Georgians were called upon to respond to the emergency.  Members of the Georgia National Guard were called to duty. Emergency responders were on duty.  Medical personnel were on duty to transfer patients from hospitals on the coast to hospitals inland and medical personnel at inland hospitals were on duty to receive and care for the patients.  Employees at hotels and eating establishments outside the evacuation zones were called to work to serve evacuees.  Volunteers and staff at emergency shelters were called on duty.  And, Georgians were stranded across the country as flights, trains, and buses were cancelled.

43.     On Tuesday, October 11, 2016, the Lawyers' Committee for Civil Rights Under Law sent a letter to Georgia Attorney General Sam Olens and General Counsel for the Secretary of State C. Ryan Germany.  The letter noted the closures in Chatham County and asked that the voter registration deadline be extended in the county to permit county residents an equal opportunity to participate in the electoral process.

44.     Mr. Germany responded on Wednesday, October 12, 2016, stating that the Secretary of State declined to ask the Governor to extend the voter registration deadline in Chatham County or anywhere else in the state.

45.     Governor Deal refused to extend the voter registration deadline despite acknowledging the severe impact of the storm.

---

[5] See http://www.georgia-demographics.com/counties_by_population (last visited Oct. 16, 2016).

46.     Defendants' refusal to extend voter registration for residents of the evacuation zones will disenfranchise a significant number of eligible voters.  People who were unable to register by the October 11, 2016 deadline are barred by state law from voting in the November 2016 election.

47.     On October 12, 2016, *Georgia Coalition for the Peoples' Agenda, Inc. et al. v. Deal et al.* (Case 4:16-cv-00269-WTM-GRS), was filed in the United States District Court for the Southern District of Georgia, Savannah Division, alleging violations of the National Voter Registration Act of 1993 and the First and Fourteenth Amendments to the U.S. Constitution.

48.     On October 14, 2016, Judge William T. Moore, Jr. granted the Plaintiffs' Motion for an Emergency Preliminary Injunction and "direct[ed] Governor Deal and Secretary Kemp to extend the voter registration deadline for Chatham County from October 11, 2016 to October 18, 2016."

49.     The residents of Bryan, Camden, Glynn, Liberty, and McIntosh counties were under the same mandatory evacuation order as the residents of Chatham County.  The residents of Chatham County have been given an additional six days to register to vote.  There is no basis for treating the residents of the other counties in the mandatory evacuation zones differently than the residents of Chatham County.  The residents of mandatory evacuation zone should be granted an additional six days to register to vote.

50.     On Saturday, October 15, 2016, the ACLU of Georgia sent a letter to Georgia Attorney General Sam Olens and General Counsel for the Secretary of State C. Ryan Germany. The letter noted the closures of county government offices in the evacuation zone and asked that the voter registration deadline be extended. A copy of the ACLU's October 15, 2016 letter is attached as Exhibit A.

13

51.     Assistant Attorney General Cristina Correia responded on Monday, October 17, 2016, stating that the Secretary of State "will not seek any extension of October 11, 2016 voter registration outside of Chatham County."  A copy of the Attorney General's October 17, 2016 letter is attached as Exhibit B.

52.     Florida, North Carolina, and South Carolina have extended registration deadlines in areas affected by Hurricane Matthew. Georgia stands alone in its refusal to protect its voters.

## JURISDICTION

53.     Plaintiffs brings this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

54.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States, because Plaintiffs bring this action to redress the deprivation, under color of State law, of rights, privileges, and immunities secured by the Constitution of the United States and federal law, and because Plaintiffs bring this action to secure equitable relief under federal law providing for the protection of voting rights.

55.     This Court has personal jurisdiction over Defendants, who are sued in their official capacity only.

56.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that gave rise to Plaintiffs' claims occurred in this judicial district.

57.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## CLAIMS FOR RELIEF

### COUNT ONE
### Undue Burden on the Right to Vote in Violation of the
### Fourteenth Amendment

58.     The Fourteenth Amendment prohibits undue burdens on the fundamental right to vote. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

59.     Because of Hurricane Matthew, the Governor's evacuation order, the closure of government offices throughout the counties in the evacuation zone, and the inability to register to vote online, tens of thousands of Georgians who would have registered to vote in the six-day period prior to the October 11, 2016, registration deadline have been prevented from registering.

60.     A voter who was unable to register to vote by the October 11, 2016, registration is prohibited from voting in the upcoming presidential election and will be completely and irreversibly disenfranchised.

61.     The State has not provided any adequate justification for its refusal to extend the voter registration deadline in light of this situation.  Notwithstanding the loss of the busiest time for voter registration, the Secretary of State declined to ask the Governor to extend the voter registration deadline in the counties in the evacuation zone or anywhere else in the state.  The Secretary has claimed that extending the deadline was "not appropriate or prudent given that opportunities to register remained available and that counties, including counties affected by the storm, need to continue to prepare for early voting."

62.     Under these circumstances, the State's enforcement of the October 11, 2016, voter registration deadline unduly burdens the right to vote, particularly for minority, young, and poor Georgians.

## COUNT TWO
### Violation of Equal Protection in Violation of the
### Fourteenth Amendment

63.     The Equal Protection Clause of the Fourteenth Amendment prohibits treating similarly situated voters differently.

64.     The failure of the State to extend the voter registration period unduly burdened the right to vote of all residents of the evacuation zones, because tens of thousands of Georgians who would have registered to vote in the six-day period prior to the October 11 registration deadline were prevented from registering.

65.     On Friday, October 14, 2016, when Judge Moore entered his order "directing Governor Deal and Secretary Kemp to extend the voter registration deadline for Chatham County from October 11, 2016 to October 18, 2016," the undue burden on the residents of Chatham County was removed.  But, the burden on the residents of Bryan, Camden, Glynn, Liberty, and McIntosh fundamental right to vote remains.

66.     The State has not provided any adequate justification for its refusal to extend the voter registration deadline to the residents of Bryan, Camden, Glynn, Liberty, and McIntosh Counties.  Notwithstanding that the residents of Chatham County and the residents of the five other counties under the Governor's mandatory evacuation order suffered the same injury – the inability to register to vote.

67.     Under these circumstances, the State's refusal to extend the voter registration period for all counties in the evacuation zones is a violation of equal protection.

## COUNT THREE
### Violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a)

68.     Section 2 of the Voting Rights Act of 1965 provides in relevant part that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State . . . in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color."  52 U.S.C. § 10301(a).

69.     Racial and ethnic minority voters disproportionately register to vote during the last days of the voter registration period immediately prior to the registration deadline.  The loss of voter registration opportunities due to Hurricane Matthew and the government's response, coupled with the failure to extend the voter registration deadline to compensate for the loss of those opportunities, impose a discriminatory burden on minority voters.

70.     This discriminatory burden is, in part, linked to social and historical conditions in the State of Georgia.  There is a long history of official discrimination in voting in Georgia against African Americans, who also suffer from the effects of discrimination in many other areas of socio-economic life, including disparities in employment, health, education, and access to transportation.  These disparities make the costs of voter registration more burdensome for African Americans, who thus have more difficulty than other members of the electorate in overcoming the barriers to registration caused by Hurricane Matthew and the State's response.

71.     Under the circumstances, the State's refusal to extend the voter registration deadline has, at best, a tenuous connection to any legitimate government policy, and therefore violates Section 2 of the Voting Rights Act.

**COUNT FOUR**
**Violation of Section 8 of the National Voter Registration Act of 1993**

72.     Section 8 of the National Voter Registration Act of 1993 requires states to process

any voter registration form received or postmarked no later than 30 days of an election.  52 U.S.C.

§ 20507(a)(1).

73.     Section 8 requires each state to:

(1) ensure that any eligible applicant is registered to vote in an election –

> A. in case of registration with a motor vehicle . . . if the valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

> B. in the case of registration by mail . . . if the valid voter registration form of the applicant is postmarked not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

> C. in the case of registration at a voter registration agency, if the valid voter registration form of the applicant is accepted at the voter registration agency not later than the lesser of 30 days, or the period provided by State law, before the date of the election; and

> D. in any other case, if the valid voter registration form of the applicant is received by the appropriate State election official not later than the lesser of 30 days, or the period provided by State law, before the date of the election[.]

52  U.S.C. § 20507(a)(1).

73.     These provisions are intended to ensure that eligible United States citizens have

sufficient time to register to vote and thus, are not forced to register to vote more than thrity days

in advance of a federal election.

74.     These provisions must be interpreted in the context of the primary purpose of the

statute as a whole.  Congress's purpose in passing the NVRA was to "increase the number of

eligible citizens who register to vote in elections" and "enhance" the participation of eligible

18

citizens as voters," and to protect the active role that community-based voter registration groups play in the registration process.  52 U.S.C. § 20501(b).

75.     The NVRA was intended to "ensure that no American is denied the ability to participate in Federal elections because of real or artificial barriers . . . [and] to make voter registration an inclusive, rather than an exclusive opportunity in the United States." 139 Cong. Rec. H495-04 (1993) (statement of Rep. Martin Frost).

76.     Toward that end, the NVRA "provides that the registration cutoff may be no more than 30 days before election or such lesser period as State may provide."  H.R. Rep. No. 103-66, at 20 (1993) (Conf. Rep.).

77.     The NVRA also focused on increasing voting access to traditionally disenfranchised communities. It did so by increasing the places open for in-person voter registration. For example, the conference report expressed concern that, unless the bill provided that unemployment offices and other agencies could provide voter registration, "it will exclude a segment of its population from those for whom registration will be convenient and readily available – the poor and persons with disabilities . . . . It is important that no State be permitted to so restrict its agency registration program."  H. R. Rep. No. 103-66 (1993) (Conf. Rep.).

78.     Hurricane Matthew effectively foreclosed the ability to register to vote for six days, including a full weekend. Two of the days the Glynn County Board of Elections office would have otherwise been open, October 10 and 11, 2016, fall within the period that the NVRA requires states to provide for voter registration in advance of a federal election.  The state's refusal to extend the voter registration deadline in the face of this natural disaster is the type of artificial barrier that the NVRA was designed to protect against.

79.     Hurricane Matthew effectively prevented a substantial number of Glynn County residents from registering to vote in the days immediately prior to the October 11, 2016, deadline. Unless Plaintiffs are granted the relief requested, the right to vote will be denied to significant numbers of eligible county residents.

80.     Since this violation of the NVRA occurred within thirty days of an election for federal office, Plaintiffs are not obligated to provide advance notice to Secretary Kemp before bringing a civil action.  52 U.S.C. § 20510(b)(3).

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

A.     Preliminarily and permanently enjoining Defendants from enforcing the current October 11, 2016, voter registration deadline.

B.     Ordering Defendants to extend Georgia's voter registration deadline by at least six (6) days from the date of its order.

C.     Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to, inter alia, 42 U.S.C. § 1988 and other applicable laws; and

D.     Granting such other relief as the Court deems just and proper.

Respectfully submitted,
/s/ James A. Yancey, Jr.

James A. Yancey, Jr.
        Georgia Bar No. 779725
Attorney at Law, P.C.
704 G Street
Brunswick, Georgia 31520-6749
(912) 265-8562 (Tel.)
(912) 265-8564 (Fax)
jayjr@standinthegap.biz

Kathleen M Burch*
        Illinois Bar No. 6202278
American Civil Liberties Union Foundation
of Georgia
1100 Spring Street
Atlanta, GA 30309
kburch@acluga.org
(678) 981-5291 (Tel.)
(770) 303-0060 (Fax)

Dale Ho*
        New York Bar No. 4445326
dale.ho@aclu.org
Julie A. Ebenstein*
        New York Bar No. 4619706
jebenstein@aclu.org
American Civil Liberties Union
125 Broad St.
New York, NY 10004
212.549.2693

*Motion for Admission pro hac vice
forthcoming


Counsel for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 17, 2016, an electronic copy was sent to Cristina Correia,

Assistant Attorney General at ccorreia@law.ga.gov.