IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| J'MARI BETHEA, individually, and WickFORCE, as an organization, | * * * |
| Plaintiff, | * CA No. 2:16cv140-WTM * |
| v. | * * |
| NATHAN DEAL, in his official capacity as Governor of the State of Georgia, and BRIAN P. KEMP, in his official capacity as Secretary of State of Georgia. | * * * * * * |
| Defendants. | * * |

### DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS'MOTION FOR A PRELIMINARY INUNCTION AND PERMANENT INJUNCTION

COME NOW Governor NATHAN DEAL and Secretary of State BRIAN KEMP, by and through their attorney of record, the Attorney General of the State of Georgia, and file this Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction and Permanent Injunction. Doc. 2.

### STATEMENT OF FACTS

By statute, the deadline for individuals in Georgia to register to vote for the November 8, 2016 General Election was October 11, 2016. O.C.G.A.

1

§ 21-2-224(a).  At 5:00 PM EDT on Wednesday, October 5, 2016, the National Oceanic and Atmospheric Administration issued a Hurricane Watch for portions of Georgia. See NOAA National Hurricane Center Advisory for Hurricane Matthew, available at http://www.nhc.noaa.gov/archive/2016/al14/al142016.public.031.shtml? (stating that a Hurricane Watch was in effect for areas south of the Savannah River and into Florida).  On October 5th, Governor Deal encouraged residents in Glynn and five other counties to voluntarily evacuate from the affected area.  Oct. 5, 2016 Gov. Press Release, available at https://gov.georgia.gov/press-releases/2016-10-05/deal-expands-state-emergency-encourages-voluntary-evacuation-six-coastal.  On October 6th, Governor Deal issued a mandatory evacuation order for Georgia residents living east of Interstate 95 in Glynn and five other counties.  Oct. 6, 2016 Mandatory Evacuation Order Map (Defs.' Exh. A attached hereto).

Other than Chatham County, all elections offices for the counties under a mandatory evacuation order were open on Tuesday, October 11, 2016, and some were also open all or part of the day on Monday, October 10, 2016. Chris Harvey Aff. (Defs.' Exh. B attached hereto).

On October 12, 2016, a suit was filed in this Court seeking an extension of the voter registration deadline for Chatham County to October 18, 2016.  *Georgia Coalition for the Peoples' Agenda, Inc. et al. v. Deal et al.* (Case 4:16-cv-00269-

2

WTM-GRS) (hereinafter the "Chatham County Suit").  On October 14, 2016, this Court "direct[ed] Governor Deal and Secretary Kemp to extend the voter registration deadline for Chatham County from October 11, 2016 to October 18, 2016."

On Saturday, October 15, 2016, three days after the Chatham County suit was filed and four days after the October 11th registration deadline had passed, the ACLU of Georgia sent a letter to Georgia Attorney General Sam Olens and General Counsel for the Secretary of State C. Ryan Germany requesting that the voter registration deadline be extended for the other five counties that were under a mandatory evacuation order.  *See* Pls.'s Exhibit A.  The Attorney General of Georgia responded to this letter stating that the deadline would not be extended.  Plaintiffs filed this lawsuit after hours on Monday, October 17, 2016, the first day of advanced, in-person voting in Georgia, seeking to extend the voter registration deadline six days beyond any Court Order.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Plaintiffs Have Not Met Their Burden of Showing That They are Entitled to a Preliminary Injunction.

A preliminary injunction in advance of trial is an extraordinary measure. *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  In order to prevail on a motion for preliminary injunction, the movant must show: 1) a substantial likelihood of

prevailing on the merits; 2) that the plaintiff will suffer irreparable injury unless the injunction issues; 3) that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing party; and 4) that if issued, the injunction would not be adverse to the public interest." *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988); *Levi Strauss and Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982 (11th Cir. 1995). A preliminary injunction is a drastic remedy "which should not be granted unless the movant clearly carries the burden of persuasion." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).

Plaintiffs have the burden of establishing their entitlement to a preliminary injunction. *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009). Plaintiffs' motion for a preliminary injunction should be denied because they have not shown any of the elements necessary to support their request for this extraordinary remedy.

### A. Plaintiffs Have Not Shown a Substantial Likelihood of Success on the Merits.

The most important factor in deciding whether to grant or withhold a preliminary injunction is the consideration of a plaintiff's likelihood of succeeding on the merits, and a failure to meet this initial hurdle relieves a court from considering the remaining factors. *Church v. City of Huntsville*, 30 F.3d 1332,

1341-45 (11th Cir. 1994). Here, Plaintiffs are not likely to succeed on the merits of their claims.

### a. Plaintiffs' Request for a Preliminary Injunction is Barred by the Doctrine of Laches.

Laches applies to a request for equitable relief when (1) there was a delay in asserting the claim; (2) the delay was not excusable; and (3) the delay caused the non-moving party undue prejudice. *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005); *Kason Indus. v. Component Hardware Group*, 120 F.3d 1199, 1203 (11th 1997); *see also Costello v. United States*, 365 U.S. 265, 282 (1961).

Here, Plaintiffs waited nearly a full week *after* the deadline for voter registration and *after* the beginning of early voting to file their lawsuit. Plaintiffs knew *prior* to October 11, 2016 that, due to a mandatory evacuation, voter registration offices in their county were closed on October 6th and 7th. Plaintiff, J'Mari Bethea, knew *prior* to October 11, 2106 that he had not registered to vote. Plaintiff, WickForce, knew *prior* to October 11, 2016 that it had not conducted a planned voter registration drive. Nonetheless, Plaintiffs waited approximately one week after the registration deadline, and after this Court has already conducted one hearing on this matter, and until *after* early voting began throughout Georgia to seek this preliminary injunction.

As the declaration of Chris Harvey, Director of Elections for the Secretary of State, makes clear, continuing registration *after* the statutory deadline and *after*

early voting has already begun throughout the State of Georgia imposes significant burdens on county election officials both with respect to registration and with respect to the administration of the general election.  Exhibits B, D, E.  Voter registration applications must be processed *before* a voter can vote, and this obviously includes voting during the early voting period.  Permitting registration at the same time as early voting necessarily introduces some confusion into the process.  For instance, Plaintiffs' counsel in *Georgia Coalition, et al., v. Deal, et al.,* CA No. 4:16CV269 (S.D. Ga.), inquired on Monday October 17, 2016 whether voter registration applicants that completed a voter registration application over the weekend through a third party, i.e., at a voter registration drive, could vote early on Monday, October 17, 2016.  *See* Exhibit C attached hereto.  The simultaneous registration of voters during a voting period has caused both confusion and strained county resources.  *See* Exhibit B ¶¶ 5-9.  Plaintiffs neglected to file their claims until after early voting had already begun throughout the State and their requested relief would impose significant burdens on county and state election officials as a result.  Plaintiffs' claims should be barred by the doctrine of laches.

    **b. Plaintiffs Lack Standing to Bring Claims for Relief Beyond Glynn County.**

"'The party invoking federal jurisdiction bears the burden of establishing' standing."  *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. __, 133 S. Ct. 1138, 1150 (2013)).  To

6

establish standing, a plaintiff must demonstrate he has suffered an actual injury or show the imminence of such injury. *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990). To meet the actual injury requirement, there must be a realistic danger of sustaining a direct injury as a result of the statutory enforcement. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Abstract harm is insufficient; the litigant must establish actual or threatened injury. *Warth v. Seldon*, 422 U.S. 490, 508 (1975). "An injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent, not 'conjectural or 'hypothetical.'" *Susan B. Anthony List*, 2014 U.S. LEXIS 4169 * 15.

An organizational plaintiff may bring a lawsuit either in its own right or based on the rights of its members. Here, the organizational plaintiff asserts only that it brings this action on its own behalf. To establish standing to bring claims in its own right, the organization must allege, and ultimately prove, the same requirements discussed above with respect to the individual plaintiff. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 177 (2000); *White's Place, Inc. v. Glover*, 222 F.3d 1327, 1329 (11th Cir. 2000). Thus, the plaintiff organization must allege that it has suffered a tangible injury. *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972). The injury must be concrete and demonstrable, not an abstract societal interest. *Sierra Club*, 405 U.S. at 739. It is

not sufficient for the organization to claim that it has an ideological or abstract social interest that has been adversely affected. *Id.* at 739-40 (explaining that "a mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself" for standing).

In *Florida State Conference of the National Association for the Advancement of Colored People v. Browning*, the plaintiff organization alleged that because of an impending voter registration requirement, the organization had to divert resources away from voter registration drives to instead educate voters regarding compliance with the regulation and to assist those who encountered problems as a result on election day.  522 F.3d 1153, 1165-66 (11th Cir. 2008). The Court found that the organization had alleged injuries sufficient to establish standing because it alleged an inability to conduct specific projects instead of "abstract societal interests" and the anticipated injuries satisfied the immediacy and likelihood requirements because they would all occur before the November 2008 election and it was likely that at least one injury would occur.  *Browning*, 522 F.3d at 1161-64, 1166.  The Court concluded that the organization "reasonably anticipated" the need to divert resources and stated that "an organization has standing to sue on its own behalf if the defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract

those illegal acts." *Id.* at 1165. In *Common Cause/Georgia v. Billups*, the Eleventh Circuit again analyzed organizational standing in the voting rights context finding that the organization had established an injury in fact for purposes of standing because it was actively involved in voting rights activities and would be required to divert resources from its normal activities to educate and assist voters in complying with Georgia's new photo identification requirement. 554 F.3d 1340 (11th Cir. 2009).

Here, by contrast the only allegations by Plaintiff WickForce is that it had intended to conduct a voter registration drive on Saturday, October 8, 2016 and because of the evacuation Plaintiff canceled the voter registration drive. Doc. 1 at ¶ 6. Plaintiff does not allege that either Defendant took any action, or inaction, that caused Plaintiff an injury. Unlike the Plaintiffs in both *Browning* and *Billups*, there was no action, or inaction, by either Defendant that *injured* will *injure* Plaintiff's future ability to conduct voter registration drives and Plaintiff has not and cannot allege that any of its resources either were or will be diverted because of Georgia's enforcement of that statutory deadline for voter registration. Finally, even if Plaintiff WickForce *could* assert standing it would be limited to Glynn County, the only county where Plaintiff contends it "regularly conducts voter registration drives." Doc. 1 ¶ 6.

Plaintiff, J'Mari Bethea, states that he is an 18 year old resident of Glynn County. Plaintiff Bethea therefore lacks standing to challenge the voter registration deadline in any county other than Glynn.

### c. Georgia's October 11, 2016 Voter Registration Deadline is Constitutional.

The Supreme Court has held that "[w]hen deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (internal citations and quotation marks omitted). The Court has recognized that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730 (1974). "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" *Timmons*, 520 U.S. at 358 (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).

Voter registration deadlines are part of the regulatory election scheme in Georgia's election code.[1] The Court recognizes "registration requirements for . . . voters . . . are 'classic' examples of permissible regulation." *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 196 n. 17 (1999).

Here, Plaintiffs contend that "Defendants' refusal to extend the October 11 voter registration deadline will result in voters' automatic and total disenfranchisement." Brief at 8. Plaintiffs' argument is really that a number of individuals *did not* register prior to the statutory deadline, but that does not make the registration deadline itself, or the lack of any state action in extending the deadline, unconstitutional.[2] Plaintiffs argue that with respect to residents of coastal counties, Hurricane Matthew "prevented them from taking full advantage of the voter registration period," but there is no constitutional right to a registration period free of interruption and Plaintiff has cited to no authority for such a proposition. Brief at 8. Moreover, as the affidavits submitted in support of this brief make clear, extending the voter registration deadline while county election officials are trying to administer early voting, sometimes at multiple locations in

---

[1] The Supreme Court has upheld voter registration deadlines of fifty (50) days prior to an election as constitutional. *Burns v. Fortson*, 410 U.S. 686 (1973); *Martson v. Lewis*, 410 U.S. 679, 680 (1973) (recognizing that "States have valid and sufficient interests in providing some period of time – prior to an election – in order to prepare adequate voter records and protect its electoral processes from possible fraud."). Of course, today, a 50 day registration period would violate the NVRA, but it does not offend the constitution.

[2] All election offices, except Chatham, were open on Tuesday, October 11, 2016.

11

the county, will cause confusion during early voting and will lead to additional delays on election day as election officials will be required to check the express poll list for a voter's name, and if the voter is not on the express poll they will then have to check a paper list.  Defendants must consider the administration of the general election in any decision to extend or not extend the voter registration deadline in the affected counties and they have concluded that an extension would cause more harm than good.  Plaintiffs argue that other states have same day registration, or other states extended their voter registration deadlines, however neither argument supports finding a constitutional violation.  That other states have set up their regulatory process with different deadlines does not make a decision to *alter* Georgia's regulatory process any less burdensome, particularly in light of the extended early voting period enjoyed in Georgia.

### d. Bryan, Camden, Glynn, Liberty and McIntosh Counties are not Similarly Situated to Chatham County.

Plaintiffs assert an Equal Protection claim premised entirely on the fact that "Hurricane Matthew did not affect the entirety of the State of Georgia equally." Brief at 10.  On that basis they seek an extension of the voter registration deadline for "all residents of evacuation zones, [otherwise] the State will continue to treat similarly situated voters differently by unfairly and arbitrarily favoring inland voters over coastal voters and now [with this Court's prior Order] Chatham County voters over voters from other counties in the evacuation zones."  *Id.*  A state

official does not violate the Equal Protection Clause by failing to equalize the unequal effects of a hurricane.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike *by the government*. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). An equal protection claim requires a showing that a plaintiff has been the victim of *intentional* discrimination. *Batson v. Kentucky*, 476 U.S. 79 (1986). The requisite discriminatory purpose must be "more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (internal citations omitted). The plaintiff may prove intent with direct or circumstantial evidence. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1189 (11th Cir. 1999).

Plaintiffs cannot succeed on their Equal Protection claim precisely because they cannot identify *any* county that was similarly situated but treated differently *by the government*. Unlike every other county, Chatham County was closed on Tuesday, October 11, 2016 due to a power outage. No other county election office was closed. Plaintiffs' Equal Protection claim should be denied.

### e. The Statutory Voter Registration Deadline Does Not Violate the National Voter Registration Act (NVRA).

The NVRA provides that an application *submitted, postmarked, accepted* or *received* within 30 days of an election must be added to the voter registration rolls *for that election.* 52 U.S.C. § 20507(a)(1). Plaintiffs contend that because "Hurricane Matthew effectively foreclosed the ability to register to vote for six days, . . . [t]he state's refusal to extend the voter registration deadline in the face of this natural disaster is the *type of artificial barrier that the NVRA was designed to protect against.*" Doc. 1 ¶ 78. The NVRA does not guarantee that voters may register on every day leading up to a registration deadline. For instance, registration offices are not required to stay open on weekends or holidays. All that is required is that applications that are in fact *submitted, postmarked, accepted* or *received* within the 30 days prior to an election be permitted to vote in that election. Nothing more.

### f. Georgia's Statutory Voter Registration Deadline Does Not Violate Sec. 2 of the Voting Rights Act.

Plaintiffs contend that enforcement of the statutory voter registration deadline violates Sec. 2 of the Voting Rights Act because minority voters "will have more difficulty overcoming the barriers to registration *caused* by Hurricane Matthew relative to other members of the electorate." Brief at 12 (emphasis added). Sec. 2 of the Voting Rights Act provides that:

> (a) *No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied* by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 4(f)(2) [52 USCS § 10303(f)(2)], as provided in subsection (b).

52 U.S.C. § 10301(a).  Plaintiffs have not identified a "standard, practice, or procedure" being imposed or applied by Defendants.  Rather, like their Equal Protection argument Plaintiffs simply contend that Defendants' failure to remedy the discriminatory effects of a hurricane violate their rights under the Voting Rights Act.  Plaintiffs provide no authority to support this interpretation of Sec. 2 of the Voting Rights Act.

Moreover, the coastal counties affected by Hurricane Matthew have a predominantly white population.  Bryan County has a 78.8% white population and 15.3% African-American population; Camden County has a 74.9% white population and a 19.6% African-American population; Glynn County has a 69.3% white population and a 26.7% African-American population; Liberty County has a 50.6% white population and a 41.3% African-American population; McIntosh County has a 63% white population and a 34.4% African-American. *See* http://www.census.gov/quickfacts/table/PST045215/13029.[3]

---

[3] Percentages are for 2015 population and racial percentages are for "white alone" percent and "black or African American alone" percent.

15

**B.     Plaintiffs Cannot Show That They Will Suffer Irreparable Harm Absent the Granting of a Preliminary Injunction.**

Plaintiffs have not shown that they will suffer irreparable harm if a preliminary injunction is not granted.  "A showing of irreparable harm is the 'sine qua non' of injunctive relief."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted).  When a plaintiff has not shown a likelihood of success on the merits, claims for irreparable injury based on an alleged constitutional injury have no merit.  *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).  Here, Plaintiffs have failed to show irreparable harm because they have not shown a likelihood of success on the merits.

**C.     The Damage to the Defendants Outweighs Any Alleged Injury to Plaintiffs.**

On a motion for preliminary injunction, the plaintiffs bear the burden of showing that the perceived injury outweighs the damages that the preliminary injunction might cause to the defendants.  *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988).  "Only in rare instances is the issuance of a mandatory preliminary injunction proper."  *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir. 1979).  As the Supreme Court has cautioned,

> Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law. . . . When the frame of reference moves from a unitary court system . . . to a system of federal courts

16

> representing the Nation, subsisting side by side with 50 state judicial, legislative, and executive branches, appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief.
>
> * * *
>
> [T]hese principles have applicability where injunctive relief is sought, not against the judicial branch of state government, but against those in charge of an executive branch of an agency of state or local governments.

*Rizzo v. Goode*, 423 U.S. 362, 378-79, 80 (1976) (citations omitted).

Here, the harm to Defendants is significant. An injunction would interfere with the State's election processes which are underway in every county in Georgia.

### D.   The Preliminary Injunction Will Not Serve the Public Interest.

A plaintiff also bears the burden of showing that the preliminary injunction would serve the public interest. *Baker*, 856 F.2d at 169. Here, the public interest weighs heavily against the issuance of an injunction. The 2016 general election has begun and requiring any number of counties to reopen their voter registration processes will cause significant harm to the administration of the election in those counties.

### CONCLUSION.

As Plaintiffs cannot satisfy the standards for an injunction, their request for a preliminary injunction should be denied.

Respectfully submitted,

SAMUEL S. OLENS        551540
Attorney General

DENNIS R. DUNN         234098
Deputy Attorney General

RUSSELL D. WILLARD   760280
Senior Assistant Attorney General
rwillard@law.ga.gov

/s/Julia B. Anderson
JULIA B. ANDERSON      017560
Senior Assistant Attorney General
janderson@law.ga.gov

/s/Cristina Correia
CRISTINA CORREIA       188620
Assistant Attorney General
ccorreia@law.ga.gov

/s/Josiah Heidt
JOSIAH HEIDT           104183
Assistant Attorney General
jheidt@law.ga.gov

Please address all
Communication to:
CRISTINA CORREIA
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
(404) 656-7063

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day electronically filed the within and foregoing DEFENDANTS' RESPONSE IN OPPOSITION with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this matter via electronic notification or otherwise:

James A. Yancey, Jr.
Attorney at Law
704 G. Street
Brunswick, GA  31520-6749

Kathleen M. Burch
ACLU of Georgia
1100 Spring Street
Atlanta, GA  30309

Dale Ho
Julie A. Ebenstein
ACLU
125 Broad Street
New York, NY  10004

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:  NONE

This 18th day of October, 2016.

                                          /s/Cristina Correia
                                          Cristina Correia            188620
                                          Assistant Attorney General